Barrett, J.
The act of 1861 (c. 170, § 2)* has no real bearing upon the question now presented. That amendment of the act of 1848 (c. 40), was intended to prevent corporations from evading the full measure of taxation by a sham locating of their principal financial *317 office. It was not intended to affect the general legislative principle of taxation, that the personal estate of such companies are to be assessed where their principal financial office is genuinely located (2 R. S. 7 Ed. 990, § 6). The amendment of 1861 (above) simply provides, that in the absence of a special certificate, the locality of the company’s “operations” is to be deemed the place of its principal financial office. Here there was no such special certificate, but the plaintiff’s principal financial office is and always has been in the city of New York.
Its operations are also carried on in the city of New York. The certificate of incorporation so declares, and, as matter of fact, it is true. Consequently, there is no conflict between the actual and the legislative fact. The company has in truth its principal office here; and it is also deemed by law to have its principal office here. This is not altered by the fact that its operations are also carried on in Kings county, nor by the fact that the certificate of incorporation so declares. The operations of such a company may well be carried on in good faith in two counties, and, when so carried on, no special certificate, under the act of 1861 is required to locate the principal financial office in either county. So long as such office is actually located in either county, the fact governs. If the principal financial office were in neither county, a special certificate would be required. Then, in its absence, the question would be up—where, within the, meaning of the law, and for the purposes of taxation were the operations of the company carried on ? But, upon the facts now before us, the question is clearly resolved by the locality of the principal office. Any other view of the act of 1861 would involve an absurdity. For how could the trustees truthfully certify, as against the fact, as well as against the original certificate, that the principal financial office was in a county *318 other than that in which the operations were conducted ? And if they could not so certify, the principal office would, by legislative presumption, be located in both counties. For the operations are in both counties ; and the certificate of incorporation, which on this head is conclusive (Western Transportation Co. v. Scheu, 19 N. Y. 408 ; Oswego Starch Co. v. Dolloway, 21 N. Y. 449; Union Steamboat Co. v. City of Buffalo, 82 N Y. 351), so declares. An absurd purpose is not to be attributed to the law-makers (People ex rel. 23d Street R. R. Co. v. Comm’rs of Taxes, 95 N. Y. 559).
My conclusion, therefore, is that the company was properly assessed in this city, where it has ifs principal financial office, and that there should be judgment accordingly, and directing the payment by the plaintiff of the taxes for the years 1880, 1881 and 1882, to the defendant McMahon, as receiver .of taxes in the city of New York.

This section provides as follows :
“ § 2. No company organized under the provisions of said act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes, shall be deemed or taken to have a principal office or place for transacting its financial concerns other than that at which the operations of said company are carried- on, Unless within the month of May in each year the president and treasurer, or a majority of the trustees, shall make duplicate certificates, stating the amount of the then capital of said company, and the portion of such capital not invested in real estate, and stating that such' company then has a principal office for transacting its financial concerns, in a county other- than that in which the operations of- said company are carried on, stating the town or city and county in which such financial office is located, and that the president and treasurer, - and a majority of the trustees of said company are then actually residents of the town or city in which such financial office is then located, which duplicate certificates shall be signed and sworn to by the persons making the same, and filed, the one in the clerk’s office of the county where the operations of said company are carried on, and the other in the clerk’s office of the county in which such financial office shall be.”