THE CHESEBROUGH MANUFACTURING COMPANY, PLAINTIFF, *v.* MICHAEL COLEMAN AND OTHERS, COMMISSIONERS OF TAXES, ETC., DEFENDANTS.

*Personal property of a manufacturing corporation — is liable to taxation in the place named in the certificate of incorporation —* 1848, *chap.* 40.

The personal property of a corporation, organized under chapter 140 of 1848, is liable to taxation at the place named in the certificate of incorporation as that at which the operations of the company are to be carried on.

*Western Transportation Company* v. *Scheu.* (19 N. Y., 408); *Oswego Starch Factory,* v. *Dolloway* (21 id., 449) followed.

SUBMISSION of a controversy upon an agreed statement of facts under sections 1279 and 1280 of the Code of Civil Proceedure.

*Coudert Bros.,* for the plaintiff.

*E. Henry Lacomb,* Corporation Counsel, and *Almet F. Jenks,* Corporation Counsel, of Brooklyn, for defendants.

LAWRENCE, J.:

This case comes before the court upon submission.

The Chesebrough Manufacturing Company, the plaintiff, is a corporation duly organized under chapter 40 of the Laws of 1848, and the acts amendatory thereof, for the purpose of manufacturing vaseline or other products of petroleum. The certificate of incor-

poration of the said plaintiff was filed with the clerk of the city and county of New York and in the office of the secretary of state of the state of New York, on the 13th day of November, 1874. The said certificate contained the following recital "and we do further certify that the operations of the said corporation shall be carried on in the city of New York." The certificate is signed by three persons who were the original corporators. The plaintiff was assessed for taxation on its personal property for the years 1878 and 1879, both in the city of New York and in the city of Brooklyn, and both cities claim the taxes for said years. It is to determine the respective rights of the two cities in the premises that this case is now submitted. The question before the court is in which of the two cities, Brooklyn or New York, were the operations of the plaintiff carried on during the years 1878 and 1879, within the meaning of the law.

It appears that in 1878 and 1879 the financial business of the plaintiff was largely transacted in Brooklyn, but that the directors held meetings in New York city, and that deposits were made with the Chemical National Bank in said city — that some checks were signed there and the mail received there.

It is provided by statute " that the real estate of all incorporated companies liable to taxation shall be assessed in the town or ward in which the same shall lie, in the same manner as the real estate of individuals. All the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be, or if such company have no principal office or place for transacting its financial concerns, then in the town or ward where the operations of such company shall be carried on." (See R. S., pt. 1 chap. 13 tit. 2, art. 1 [1 R. S., 389] § 6.)

As has been stated by the certificate of incorporation, it was declared that the operations of the said corporation shall be carried on in the city of New York. It seems to us that under the provisions of the act of 1848 and the acts amendatory thereof, the certificate is conclusive evidence that the legal residence of the plaintiffs was in New York city. (See act of 1848 §§ 1, 9, 11.) No subsequent certificate seems to have been filed designating any other

place than the city of New York, in which the plaintiffs should carry on their business. (See Laws of 1853, chap. 333; Laws of 1857, chap. 29, §§ 2 and 3; Laws of 1861, chap. 170.) In the case of the *Western Transportation Company* v. *Scheu* (19 N. Y., 408), it was held that, the act for the incorporation of companies to navigate the lakes and rivers (chap. 232 of the Laws of 1854) requiring the designation in their organic certificate of the city or town and county in which the principal office for managing the affairs of such company is to be situated, the certificate is *conclusive* as to the location therein designated, as that of the principal office of the company. In that case the court said: " The only question then is in regard to the effect as evidence of the statement in the certificate. There are some considerations which seem to me decisive of this question. Unless the legislature intended that the certificate should be conclusive as to the location of the principal office, it is difficult to see any adequate motive for requiring the statement to be made. It is in no manner essential to the existence of a corporation that the place of its principal office should be fixed or even that it should have any such office. We can, however, see obvious reasons why it is expedient that corporations should be deemed to have a location for certain purposes, among which is that of taxation, and that this should be definite and certain and not subject to fluctuation or doubt. * * * To avoid disputes upon the subject was, I apprehend, one motive for requiring the location to be fixed by the certificate. *It is not important that a corporation should be taxed where it does the greatest amount of its business, but it* is important that the place where it is liable to be taxed should be known." (See, also, *Oswego Starch Factory* v. *Dolloway*, 21 N. Y., 449.)

In that case the corporation was organized under the general act of 1848, and it was held that the location for the purposes of taxation of a manufacturing corporation, is the place designated in its certificate as that where the operations of the company are to be carried on. It was also held that it is immaterial that the principal office or place for transacting the financial concerns of the company is located in a different town. (See, also, case of the *Union Steamboat Co.* v. *The City of Buffalo*, 82 N. Y., 351.)

These cases seem to conclusively establish that the plaintiff having

declared by its certificate of incorporation that the operations of the said corporations shall be carried on in the city of New York; its liability to taxation was in the city of New York. The second section of chapter 170 of the Laws of 1861 is not in point, for the reason that it is expressly admitted in the submission that the duplicate certificates thereby provided for were never filed, either in the city of New York or in the city of Brooklyn. We think the contention of the counsel for the city of New York, that in the absence of the duplicate certificates mentioned in that act, the assessors could safely assume that the original certificate controlled is correct.

For these reasons we are of the opinion that judgment should be given for the defendants, the commissioners of taxes and assessments of the city of New York.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment ordered for defendants.