### FITZGERALD *v.* EQUITABLE RESERVE FUND LIFE ASS'N.

*(City Court of New York, Trial Term.* November 21, 1888.)

INSURANCE—MUTUAL BENEFIT—ASSESSMENTS—CONFLICT BETWEEN POLICY AND BY-LAWS.

    A provision in a certificate of membership in a mutual life association, evidently contemplating a mortuary assessment to meet each death loss, will prevail over a clause of the by-laws of the association tending to limit the number and amount of assessments to be levied, inconsistent therewith, though the application stipulates that the by-laws shall be part of the contract; it not appearing that the applicant's attention had been called to the clause.

On motion for new trial.

Action by Maggie Fitzgerald against the Equitable Reserve Fund Life Association on a certificate of membership in said association for her benefit. Verdict for plaintiff.

*P. Q. Eckerson,* for plaintiff. *McAdam & McAdam,* for defendant.

EHRLICH, J. The blank form of the so-called policy, submitted upon the motion, contains this language: "Upon the death of a member a mortuary assessment shall be made, (but not more than one for each death,) where the death fund is sufficient to meet the claim thereby arising." There can be no doubt that the real intent of the entire instrument requires that the word "sufficient" should be read "insufficient," and so counsel on both sides have treated it in their briefs. The plain meaning of the contract is that defendant shall make a mortuary assessment to meet each death loss, unless the fund is already sufficient for that purpose. The proof elicited from defendant's president showed

that such assessment would have realized to the company the full amount of the recovery herein, besides the reserve which the by-laws provided for. It further appeared that an assessment had been made, realizing upward of $11,-000, and the burden was then upon the defendant to show that plaintiff was not justly entitled to recover the full amount of her demand therefrom. It is true there is a provision among the by-laws which tends to limit the number and amount of assessments to be levied upon the members, but this is a provision for their benefit, and might be waived by them. If assessments were made in excess of that limit, which, therefore, the living members were not bound to pay, but in fact did pay, the defendant would be required to meet the demands of its beneficiaries to the extent of such payments. This provision is not specially pleaded as a defense, and its only bearing or pertinency would be its influence upon the amount realized from the mortuary assessment, to be levied upon the death of each member, and it furnishes an additional reason for holding that the fair intent and meaning of the contract is that the rights of each beneficiary, as to the mortuary fund, shall not be confused or intermingled with those of other claimants. It appears, also, that some provisions of the by-laws justify the inference that a commingling of claims and an apportionment of assessment was contemplated. The question thereupon arises, the by-laws being referred to in the policy and the application therefor, and being inconsistent therewith, which must prevail? The better reason seems to require that, in case of conflict, the language of the policy shall prevail over the terms of the by-laws. The holder of the policy had a right to understand, from its terms, that the beneficiary thereunder would receive upon his death $2,000, or the full amount of an assessment, ordered for her benefit, less the 25 per cent. reserve. He had a right to assume that the by-laws, to which it is not claimed his attention was called, would be consistent with its provisions, and adapted to carry them out. These considerations render unnecessary a critical review of the rulings upon evidence at the trial. It was not claimed that there was sufficient evidence as to alleged misrepresentation to justify the submission of that issue to the jury. If it was error to admit the policy, except in connection with the application therefor and the by-laws, these also were received at a later stage, and the error, if any, was thereby cured. At the close of the trial defendant did not ask the submission of the cause to the jury, and, if the real contract between the parties has been rightly construed, then plaintiff would be entitled to 75 per cent. of all a full assessment would realize, up to the amount of the policy; and if, upon the evidence, the jury had found a verdict for less than $2,000, the court would have been legally constrained to set it aside. The real question is thus narrowed down to the interpretation of the contract itself. Although not free from uncertainty, the court inclines to that meaning which seems the more consonant with justice and the fair intent and understanding of the parties. The motion for a new trial is denied.