### HOMESTEADERS' LIFE ASS'N v. HOLDEN et al. (No. 1900.)*

(Court of Civil Appeals of Texas. El Paso. Oct. 28, 1926. Rehearing Denied Nov. 18, 1926.)

**1. Insurance**  ⬤�439;818(1)—**Letter promising member further notice of increased premium held admissible as evidence of estoppel to assert forfeiture.**

In action on benefit certificate, where deceased's membership had been canceled for nonpayment of premium, letter from society announcing increase in rate and promising further correspondence relative thereto *held* admissible under issue of estoppel.

**2. Insurance**  ⬤�439;755(1)—**Promising member further notice of increased premium estopped association from asserting forfeiture of death benefit certificate for nonpayment.**

Evidence in action for death benefits that association represented to deceased that he would be further notified concerning increase in premium, which was relied upon, though not a waiver, *held* to estop association from setting up forfeiture of membership for nonpayment of increased premium.

**3. Insurance**  ⬤�439;754—**After giving notice of premium increase, association could not assert member's failure to pay old rate.**

Representation to deceased that he would have further notice of an increase in premium to take effect at once excused member from tendering further premiums at old rate.

Error from District Court, Taylor County; W. R. Ely, Judge.

---

Action by Maggie Holden and others against the Homesteaders' Life Association. Judgment for plaintiffs, and defendant brings error. Affirmed.

Locke, Locke, Stroud & Randolph, of Dallas, and Wagstaff, Harwell & Wagstaff, of Abilene, for plaintiff in error.

Scarborough & Wilson, of Abilene, for defendants in error.

HIGGINS, J. This is an action by the defendants in error, Maggie Holden, suing individually and as next friend for Bertie Holden, a minor, and Wilkes Holden, against the plaintiff in error, the Homesteaders' Life Association, a fraternal benefit society, to recover a death benefit of $1,790, provided for under the terms of a benefit certificate issued by the plaintiff in error upon the life of Isaac C. Holden, Jr., the husband of Maggie Holden and the father of Bertie Holden and Wilkes Holden, in which certificate the defendants in error were named as beneficiaries. The certificate sued upon was dated July 15, 1908. Issac C. Holden died February 12, 1924.

It was admitted in the answer that a benefit certificate had been issued as alleged in the petition, but it was denied that all of the assessments or premiums due and payable under the terms of the certificate had been paid during the lifetime of Isaac C. Holden, Jr. It was alleged that according to the terms of the certificate sued on it was provided that Isaac C. Holden, Jr., should pay an assessment or premium of $1.80 each month in advance, and it was provided by the terms of said certificate and the by-laws of the association that each monthly assessment or premium should be due on the 1st day of the month, and that if it should not be paid on or before the last day of the month, the member insured should thereby become suspended without notice from all rights and benefits in the association, and the benefit certificate should thereby, without notice, become null and void. It was further alleged that by the by-laws of the association adopted October 10, 1923, the rates of assessment from and after January 1, 1924, on all certificates of the same form as that issued to Isaac C. Holden, Jr., were raised in accordance with a table set forth in said answer; that no payment in any sum whatever was ever made of the assessment for the month of January, 1924, or the assessment for the month of February, 1924, due under the certificate sued on; and that, therefore, Isaac C. Holden, Jr., became suspended from all rights and benefits in the defendant society, and the certificate sued on became null and void by reason of the nonpayment of such assessments prior to his death on February 12, 1924.

By supplemental petition the defendants in error set up: That the deceased had been paying his premium regularly for many years, and on October 25, 1923, he received a notice from the plaintiff in error that his next assessment would be due on January 1, 1924, but that "your rate will be raised on the January payment. We will write you regarding this." That thereby defendant in error waived its right to demand payment in January, 1924, of the January assessment until it had notified deceased of the amount of the assessment due January 1st, and it had failed to so notify him. This matter was also pleaded as an estoppel to forfeit. The jury found that the deceased did not receive notice of the new rate effective January 1, 1924.

[1] The deceased was a member of a local lodge at Des Moines, Iowa, of which Mary McNutt was secretary. Upon a printed form dated 10–20–23, properly addressed to the deceased at Merkel, Tex., R. R. No. 1, said lodge by its secretary acknowledged the receipt of assessment and dues indicated upon the inclosed receipt, and advised that the next payment was due January 1st. In the lower left-hand corner was the notation in writing "(over)." Upon the reverse appears the writing pleaded in the supplemental petition. Error is assigned to the admission in evidence of the printed form above mentioned and notations stated but this matter presents no error.

The witness for defendant, Mary McNutt, testified that about November 1, 1923, she mailed to the deceased at Merkel a pamphlet containing the readjustment plan; that she wrote him a letter dated December 10, 1923, asking what he intended to do about his certificate and whether he intended to pay the increased assessment for January, 1924, and mailed him a card dated January 1, 1924, notifying him that his monthly assessment of $2.25 was due and payable January 25th, and should reach her by that time or he would be delinquent; that these communications were not returned to her. As we have heretofore stated, the jury found, and the evidence abundantly supports the finding, that the deceased was not notified of the new rates. In view of the well known regularity and certainty of the mails, this raised an issue of fact as to whether Mary McNutt gave the notices she testified to. If she mailed them properly stamped and addressed with her return card thereon, as she says she did, they should have reached the deceased or been returned to the sender. The fact that they neither reached the addressee nor were returned to the writer warrants the inference and assumption that they were not sent as the witness claimed.

[2] It is contended by the plaintiff in error there is neither waiver nor estoppel shown by this record; that there is no waiver, because waiver is the relinquishment of an existing right, and no right of forfeiture occurred until January 25, 1924, and there was

nothing done subsequent to that time evidencing a waiver; that there is no estoppel in the case because it was neither pleaded nor proven that the deceased relied upon the promise to advise him of the amount of the increased assessment. There is a distinction between waiver and estoppel but the dividing line between waiver implied from conduct and estoppel is oftentimes shadowy, and in the law of insurance the terms are quite often used interchangeably; that which is often referred to as a waiver is not a pure waiver, but is an application of the principles of estoppel. 27 R. C. L. 904, 905. In the present case we think there is no waiver in the true sense of the term for the reason stated by the plaintiff in error.

However, we think the doctrine of estoppel is applicable. We concur in the view of the plaintiff in error that there can be no estoppel in the absence of evidence showing the deceased relied upon the promise to write him regarding the raise in his assessment upon the January payment, and it is true there is no direct positive evidence to that effect, but the record shows that the benefit certificate was issued to the deceased in July, 1908; the deceased had never before been delinquent in the payment of his monthly assessments, usually paying quarterly and paying two months in advance. For some time prior to his death he had been seriously ill with a tumor of the brain from which he suffered severe headaches. The tumor caused his death. It is not reasonable to assume that one in such condition would have purposely defaulted in the payment of the January assessment. He could not know the amount of the increase and make the correct payment until he was advised what it would be. The secretary promised to write regarding the same, and he had a right to rely upon that promise. It is reasonable to conclude, under the circumstances, that he did rely upon the promise, and for this reason we are of the opinion that the evidence is sufficient to support an estoppel. Woodmen of World v. Putnam (Tex. Civ. App.) 206 S. W. 970; Woodmen of World v. Fraley, 94 Tex. 200, 59 S. W. 879, 51 L. R. A. 898.

There was no exception, general or special, to the sufficiency of the supplemental petition. It set up the promise, and in general terms pleaded the same both as a waiver and estoppel. In the state of the pleading we regard it as sufficient to admit evidence of estoppel and support the judgment based thereon.

[3] Plaintiffs in error further contend that in any event the deceased was not excused from paying or tendering the assessment at the old rate, citing various cases involving invalid raises where it was held that failure to pay the amount legally due operated as a forfeiture. These authorities are not applicable. The validity of the present increase is not in issue. The deceased had to pay in full or his policy was forfeited. It would have been idle for him to have tendered less than the amount legally due. Such tender would have been ineffective for any purpose.

Affirmed.