### STROH et al. v. ODOM et al.
### No. 9817.

Court of Civil Appeals of Texas. Austin.
Nov. 2, 1949.

Rehearing Denied Jan. 4, 1950.

Ghent Sanderford, Austin, Goldsmith, Bagby & Furr, Arthur Bagby, Austin, for appellants.

Alvin J. Wirtz and Cofer & Cofer, Austin, John D. Cofer, Austin, for appellees.

GRAY, Justice.

This suit was brought by fifteen individual and six corporate members of Delta Kappa Gamma Society against three defendants, naming them as follows: Dr. M. Margaret Stroh, the national executive secretary of the society, Berneta Minkwitz, its national treasurer, and Delta Kappa Gamma Society, a corporation which has its principal place of business in and resides in the City of Austin, in Travis County, Texas, praying for injunctive relief restraining the defendants from:

Removing the national office of the Society from Austin, Texas; establishing a branch office of the national society headquarters at Washington, D. C.; from performing substantially the employment of National Executive Secretary and National Treasurer at any place other than the national headquarters of the society at Austin, Texas; from converting the national office at Austin, Texas, into a nominal, skeleton and fictional office; from holding any referendum other than as authorized by the convention of the society or its national executive board on the above questions, or from declaring the result, or putting into effect, any such referendum, and from expending any funds of the society in carrying out any of the above acts.

At the trial, all defendants answered by plea in abatement, and further, denied any intent to move the principal office of the society from the City of Austin, alleged that the management of the internal affairs of the society is vested in a board of trustees (naming the members of such board), and alleged that the society is a Texas corporation with its principal office and place of business in Austin, Travis

County, Texas, and that Miss Birdella Ross of Minneapolis, Minnesota, is its national president.

Upon a non-jury trial, the court awarded the injunctive relief prayed for, and filed findings of fact and conclusions of law.

Delta Kappa Gamma Society was incorporated in Texas in 1929 under Sec. 2 of Art. 1302, Revised Civil Statutes of Texas. The provisions of the charter relevant here are:

Article II. "This corporation is formed for educational and benevolent purposes, particularly for extending aid to women teachers and students by means of founding scholarships for study, for developing loyalty and high ideals in the teaching profession, and for conferring distinction upon women members of the teaching profession.

Article III. "The place of business of the central organization of the corporation is Austin, Texas."

Article VI. "The organization has no capital stock, is not for profit, and has no assets."

Article VII. "The work of this organization is to be carried on in the State of Texas, and in the other states of the Union.

"The central or national organization will issue sub-charters, or certificates of memberships, to the several chapters and state organizations and membership certificates to individual members."

Article V provides that "the number of directors, trustees or founders shall be twelve," and names twelve to serve for the first year. This charter does not appear to have been amended.

The evidence shows that the society now has members in the forty-eight states and the District of Columbia, and that in each of the states (unless perhaps Connecticut) state charters have been issued. The record contains only the Texas charter. There is not brought forward any of the constitutions or by-laws of any of the states. A constitution adopted by the national convention in 1945 and in force at the date of the trial provides:

Article V. The unit of organization in the society shall be the local chapter; each state organization shall consist of all chapter organizations within the state and all state and chapter members residing within the state, and the national organization shall consist of all chapter and state organizations within the nation and of all members residing within the nation. That the twelve original founders of the society shall be known as national founders.

Article VI. The officers of the national organization shall be a president, a vice-president, four regional directors and a parliamentarian who shall be elected by the national convention in even numbered years. And, also, a treasurer and an executive secretary to be selected by the national executive board and who shall be employed members of the staff at national headquarters.

Article VII. The national executive board shall include all national officers, the national founders, and past national presidents, the regional directors, the state presidents and the state executive secretaries. The executive board shall have authority to act in matters requiring immediate decision and action. Provides for named committees to be appointed by the president of the national organization or elected by the executive board. (No provision is found for a board of directors or trustees. The national planning committee is more nearly such board.)

Article X. A convention of the national organization shall be held biennially in even numbered years at a time and place determined by the national executive board. (Prior to the 1945 constitution the convention was held annually.) At the national convention a state organization may cast one vote for each five members, or major fraction thereof, residing within the state.

Article XII. Suggested constitutional amendments must be approved by a majority vote of the national planning committee in conjunction with the national parliamentarian before being submitted for vote of the membership of the society, and a two-thirds vote of those voting is required for adoption of any such amendment.

At the national convention held in San Francisco in 1946 it was decided to submit the question of the removal of the national headquarters from Austin to some other place in the United States. A majority of the votes cast favored retaining the office at Austin, and this result of the vote was declared by the national convention held in New York City in 1947. At the next national convention held in Milwaukee, the reopening of the question was refused by the convention. However, twelve trustees were named or elected. A vote of these twelve trustees was taken, by letter, on the question of the advisability of opening an office in Washington, D. C. Seven of the twelve were favorable and five were opposed. A referendum of the membership of the national society was submitted by appending ballots to the January 1949 issue of the News (a publication of the national society). It was this action on the part of the said trustees that prompted this litigation.

It appears undisputed that the Austin office has always been and is now considered to be the national headquarters of the society.

We are not furnished with the minutes of the Milwaukee meeting electing the board of twelve trustees, and can not, except by inference, say whether they were elected as trustees for the national association or for the Texas corporation.

As here presented, this appeal has to do with the status of the society as a national organization and its management as such. Also, the status of the organization as a Texas corporation and its management as such.

Appellants argue that "the charter and constitution of the society constitutes a contract between the society and its members into which the statutes of the State of Texas must be read and are controlling." And further, in effect, say that the corporate powers of the society can only be exercised by the board of trustees, or directors, selected for the Texas corporation and functioning under the laws of Texas.

■ We do not think the board of trustees selected at the Milwaukee convention were either dejure or defacto trustees of the Texas corporation because they were not elected in Texas and there has been no action had by the corporation recognizing them as such trustees. Franco-Texas Land Co. v. Laigle, 59 Tex. 339. These trustees then could not act for the Texas corporation in the transaction of any of its business.

■ The Texas charter fixed the principal office of the society at Austin, and in order for such office of the Texas corporation to be changed the charter would have to be amended as is provided for by Art. 1314, Revised Civil Statutes of Texas. Hawk & Buck Co. v. Cassidy, Tex.Civ. App., 164 S.W.2d 245; Weaver v. Simmons, Tex.Civ.App., 197 S.W.2d 219.

We think the record shows that the several state organizations have associated themselves together into a central, or national, organization and have given that organization executive authority to act in matters affecting the society at large. The parties do not otherwise contend in their briefs.

■ It seems clear to us that the provisions of the national constitution not only authorize, but direct, the national officers of the society and the delegates from the several states to assemble in convention at a time and place designated by the executive board, and to this convention (except in cases requiring immediate decision and action) the constitution commits the authority of transacting the national business of the society. Sovereign Camp Woodmen of the World No. 955, v. Fraley, 94 Tex. 200, 59 S.W. 879, 51 L.R.A. 898.

The authority of the national organization to act is to be found in the constitution of the national society, and though that instrument names fourteen committees and boards, we find no provision therein for the election of a board of trustees. The record before us does not contain the minutes of the meeting at which this board of trustees were elected, and we are not advised what authority was given such trustees nor the duties imposed upon them.

We hold that the national constitution vests authority in the national convention

to act for the society in matters of management and control of its national business affairs (except in cases requiring immediate decision and action when the executive board may act). And that the purported board of trustees have no authority to act in the matter of moving the main or principal office to, or opening a branch office in, Washington, D. IC., for the reason it is not a constitutional board.

Appellants argue that the questions here presented involve only questions pertaining to the management of the internal affairs of the society, for which reasons the courts have no authority to interfere. We are of the opinion that the proceedings under attack here are in violation of the laws of the society, and we find no provision in such laws for a determination of the grievance within the society, for which reason resort may be had to the courts. Knights & Daughters of Tabor v. Reid, Tex.Civ.App., 270 S.W. 241 (Er.Dis.); Campbell v. Hood, Tex.Com.App., 35 S.W. 2d 93, 85 A.L.R. 266; 10 C.J.S., Beneficial Associations, § 65, page 312; 7 C.J., p. 1117, Sec. 80.

Appellants insist that the suit should not have proceeded to trial because all members of the board of trustees were not before the court. Appellants' petition names as defendants and prays for judgment against: "Dr. M. Margaret Stroh, a feme sole, who resides in Travis County, Texas; Berneta Minkwitz, a feme sole, of Travis County, Texas, and Delta Kappa Gamma, a corporation, which has its principal place of business in and resides in the City of Austin, in Travis County, Texas."

Appellants, in their plea in abatement set out the names and residences of the several members of the Board of Trustees elected at the national convention and alleged by them to be trustees for the Texas corporation. Of these only two are residents of Texas, and they are each plaintiffs. No relief is sought against the board. All members of the board (except the two plaintiff members) are beyond the jurisdiction of the court.

The named defendants answered. The two individual defendants were before the court in person and by attorneys, and the corporate defendant by attorneys. All parties defendant named in the petition were before the court for which reason necessary and indispensable parties were not absent.

The judgment of the trial court is: "* * * that the defendants, Dr. M. Margaret Stroh, a feme sole; Berneta Minkwitz, a feme sole; and Delta Kappa Gamma Society, a corporation; their officers, agents, servants, employees, and attorneys, are each and all of them hereby permanently enjoined" from doing the acts hereinabove set out.

All assignments of error are overruled, and the judgment of the trial court is affirmed.

Affirmed.