## BROWN *vs.* MEADY.

10  391
89  106

In the deed conveying a lot of land, the grantor made the following reservation :
 " *And the said A. hereby reserves to himself the right of passing and repassing*
 " *with teams in the most convenient place, across the land conveyed.*"   *Held* that,
 the term " *across*" did not *necessarily* confine the right of a way to a *transverse*
 one, over the lot.

But, where the grantor's lot was nearly in the form of a parallelogram, and the
 grant was of one half, dividing it longitudinally ; and it appeared that the
 rear end of the grantor's land not conveyed, occupied as a mowing field, was
 separated from the front where the grantor's buildings were, by an impass-
 able barrier ; the reservation was construed as retaining to the grantor the
 right of passing in the most convenient route, from said field to his build-
 ings, though in so doing it was necessary to pass over the lot both *transverse-*
 *ly* and *lengthwise.*

This was an action of trespass *quare clausum.* The general
issue was pleaded, with a brief statement claiming a right of
way. It was proved or admitted, that the lot in which the tres-
pass was alleged to have been committed, was formerly owned
by the defendant, who conveyed it to *James Brown*, under whom
the plaintiff held. In the deed from the defendant to *Brown*,
which was dated 23*d of March*, 1831, after a description of
the lot conveyed, was a reservation in these words. " *And the*
*said Alexander*" (the defendant) " *hereby reserves to himself*
" *the right of passing and repassing with teams in the most con-*
" *venient place, across the land here conveyed.*"

The land of the plaintiff and defendant, — the location of
the defendant's buildings, — his field, — and other objects refer-
red to in the report, are delineated in the sketch below.

It appeared that toward the rear of the lots, there was a high
and steep hill extending nearly across both, which was impass-
able by teams, separating the defendant's mowing field from his
buildings ; — and that the most convenient way in which the
defendant could go to his said field, was by the route which he
took, described below by the dotted line, and which is the tres-
pass complained of, without going upon the lot adjoining, which
belonged to one *Blanchard.*

It was proved that the defendant had requested *Brown* to

mark him out a way, the spring before, when *Brown* told him he must go in the *Blanchard* road. The defendant objected to this, alleging that he could not do it rightfully, the road being the property of *Blanchard;* and thereupon gave notice to *Brown* of the way he claimed to go, — in which he afterwards did go, for the purpose of carting his hay from the said back field to his barn, doing no more damage than was unavoidable in going that route, and omitting to pass through the plaintiff's wheat field, the wheat having been sown before he gave him notice as aforesaid.

It appeared that for about ten years next before the suit, the plaintiff, and defendant, and *Blanchard,* had used a private road by mutual consent, it being a useful and convenient one, for passing to and from the rear of their lots. Said road is marked " the *Blanchard* road," on the sketch below.

Said *Blanchard* was called by the plaintiff, and testified that he told the defendant he might go upon his land in the old road, as had been before understood and agreed between *Brown* and himself, — that the defendant asked him to give a writing to that effect, which he refused to do. He further testified, that the land over which the said road passed, was his, until it connected itself with the old road running across the plaintiff's land ; — that no one had any right to pass there ; — that he would not give the defendant any right to pass it for any term of time, — but had no objection to his passing for the present, as a mere matter of favour and indulgence.

It was contended by the defendant, that taking the reservation in his deed to *Brown* in connexion with the extrinsic facts proved, *viz.* that his mowing field in the rear of his lot retained, was separated from the front, where his house and barn were, by a barrier impassable by teams, — and the only route by which he could transport his hay from that field to his barn was by passing upon the land conveyed to *Brown,* without going upon the land of *Blanchard;* that he had a right to pass and repass with teams *where he did,* it being the most *convenient* place across the land conveyed, from the front to the rear of his said lot. But *Weston J.* who tried the cause, ruled that the defendant was not authorized so to pass over the land conveyed,

Brown *v*. Meady.

and that the reservation and facts proved, did not justify the entering and breaking complained of.

The defendant thereupon consented to a default, it being agreed by the parties, that if in the opinion of the whole Court this ruling was erroneous, and that the reservation and facts proved, constituted a good defence, then the default was to be taken off, and the plaintiff to become nonsuit, otherwise, the default was to stand.

*Sprague*, for the defendant, took the same positions that were taken in the opening of the cause to the jury, adverting to the circumstances of the location of the defendant's buildings, — his mowing field — the obstruction, &c. as conclusive to show what way across the lot was intended to be reserved. That these facts were to be taken into consideration in giving a construction to the deed, he cited *Storer v. Freeman*, 6 *Mass.* 435.

The defendant reserved *a right of way* to pass from his house to his field, — he reserved, and the law will appropriate, the most *convenient* route for that purpose, — and the case *finds* that the most convenient route, was in fact taken.

*Otis*, for the plaintiff.

1. A grant of a way from A. to B. " in, through and along," a particular way, will not justify the grantee in making a trans-

verse road.  *Senhouse v. Christian,* 1 *T. R.* 560 ; *Russell v. Jackson,* 2 *Pick.* 574.

The grant in this case is of a road within certain limits, — that is, *across* the land, and in no other way.  Under this grant the defendant has no right to a way *lengthwise* of the plaintiff's lot.  He has no right to enter at one place, go partly across, and then come out on the same side of the lot.  *Comstock v. Van Deusen,* 5 *Pick.* 163.  That case is strikingly similar to the case at bar.  1 *Roll. Abr.* 391 ; 1 *Ld. Raym.* 75.  Passing and repassing is restrained by the word " *across.*"

2. The most obvious construction of the deed would seem to be, that the parties intended the `right of travelling in the old road, as it had been and was then travelled, which the plaintiff was to cause to be secured to the defendant.  This view is strengthened by the parties having acquiesced in it for so long a time.  The defendant's using this way after the giving of the deed, was a laying out of the way reserved, after which no alteration will be permitted.  *Wincook v. Bergen,* 12 *Johns. R.* 222 ; *Jones v. Percival & al.* 5 *Pick.* 485.

3. But if he had a right to locate a different way, and neglected to do so, he cannot change the one laid out by the grantor.  *Russell v. Jackson,* 2 *Pick.* 578.

The opinion of the Court was delivered by

MELLEN C. J. — *Meady,* being the owner of a piece of land nearly in the form of a paralellogram, extending in a south-east direction from a county road at the north-west end of the tract, and bounded on the south-west side by land of one *Blanchard,* sold the south-west half of the tract to the plaintiff, *Brown ;* and the deed contains this clause, " and the said *Alexander* " (the defendant) hereby reserves to himself the right of pass- " ing and repassing with teams in the most convenient place, " across the land conveyed."  The object which the parties had in view, in reserving this right of way, is apparent upon the report of the case, namely, because *Meady* had no convenient way in which he could pass, on *his own land,* from his buildings near the *north-west end* of the lot, to his mowing field at the *south-east end* of it.  The case further finds, that the

same hill or precipice, forming the before-mentioned obstruction, extends so far upon the land conveyed to *Brown*, that the most convenient way in which the defendant could reach his mowing field (without going on *Blanchard's* land) was by the route which he took. The private way which had been used by the consent of the *plaintiff, defendant,* and *Blanchard,* for several years before the deed was given, ran from the public road before named, over a part of the north-west end of *Brown's* lot in an easterly direction, *to* and *on* the land of *Blanchard,* and so that, in order to reach his mowing field he must again cross over *Brown's* lot, after leaving the private way. And the defendant could pass only by *sufferance* on *Blanchard's* land. These are the principal geographical facts in the case; and they are presented without objection from either of the parties; and, as mentioned in the case of *Comstock v. Van Deusen,* they were properly presented and received as facts surrounding the question, and necessary to its correct decision.

What then is the true construction of the language employed in the reservation? In the first place the object was to secure to *Meady* " *a right,*" not an *indulgence.* It was *a right* to pass over the land of *Brown;* for the reservation goes to diminish the value of *his* land, and in its operation must have been intended to give the same rights to *Meady,* as though *Brown* had by his deed *granted* the easement to *Meady.* If we consider the contracting parties as acting with understanding, and *Meady* with common prudence, we must presume that the design was to reserve to himself a right to pass to his mowing ground without being a trespasser on any one, or resisted by any one, and a right which would answer his purpose. The presiding Judge, we think, gave too restricted a construction to the word, " across." We cannot think that, in then existing circumstances, the design in using that word was, merely to reserve a right to *cross Meady's* land, and trust to an indulgent owner of the adjoining land for permission to go a step further. The word, " across," may mean, " over": it does not necessarily exclude the idea of passing over a parrallelogram in a longitudinal direction. To pass *across* a bridge, is a common expression; but does not mean, to pass from one side of it to

the other. In the cited case of *Comstock v. Van Deusen*, the reservation was, " to cross lot, No. 16, above-mentioned." *Wilde J.* says, in delivering the opinion of the Court, " the " words of the grant are to be understood according to their " common meaning, *unless it appears that the parties intended* " *to use them in a different sense.* The way claimed by the de- " fendant is not *across* the plaintiff's lot, according to the usual " acceptation of the word : and it cannot be presumed from " the facts and circumstances reported, that it was otherwise " understood by the parties." In *Senhouse v. Christian,* it was decided that a right to make *transverse roads across* the slip of land in question, was not conveyed, by a grant of a way from A. to B. *in, through* and *along* a particular way. *Buller* says, " here the *limits* of the grant are mentioned." — This is very different from the case before us. The counsel for the plaintiff has also contended that the defendant had once made his election, by travelling in the private way above-mentioned. This argument is not sustained by the *facts* of the case. The passage across the end of the lot, to the private way on *Blanchard's* land, was the result of a temporary *arrangement* made by the parties in this action and *Blanchard,* for mutual accommodation. It depended for its continuance on the uncertain indulgence of *Blanchard.* All this has no resemblance to the designation, *claimed of right,* under the reservation in the deed. He was obliged to resort to this course, as the plaintiff would not, though requested, mark out a way, many months before. The way designated is in the most convenient and proper place; of course, the act of which the plaintiff complains as a trespass on his land, was only the due exercise of a legal right.

We are all of opinion that the action cannot be maintained. According to the agreement of the parties, a *nonsuit* must be entered.